Charles M. WENZEL et al., Appellants,

v.

ROLLINS MOTOR COMPANY et al., Appellees.

No. 6814.

Court of Civil Appeals of Texas, El Paso.

March 5, 1980.

Rehearings Denied April 16 and May 14, 1980.

Malcolm McGregor, Philip T. Cole, El Paso, for appellants.

Scott, Hulse, Marshall & Feuille, Frank Feuille, IV, Dudley & Dudley, Paul W. Dudley, William C. Dudley, El Paso, for appellees.

## OPINION

OSBORN, Justice.

This personal injury case, arising out of a one vehicle accident, was submitted to a jury on issues involving the strict liability of an automobile manufacturer and a tire manufacturer, and negligence and breach of warranty of an automobile dealer. Basically, all liability and defensive issues were decided in favor of the Appellees. A take nothing judgment was entered, although the jury did find damages in a total amount of $110,443.80 for all claims resulting from the injuries to three occupants of the vehicle and the death of a fourth occupant. We affirm.

## FACTS

Charles M. Wenzel purchased a 1973 International Scout from Rollins Motor Company in October, 1973. Because of vibration problems, the vehicle was returned to the dealer several months later who, according to Mr. Wenzel, recommended installation of a hydraulic steering stabilizer, but Mr. Wenzel was advised at that time that the vehicle was safe to drive without the stabilizer and it was never installed. He left on vacation the following day, pulling an 18-foot Santa Fe Travel Trailer. On the return trip, while passing another vehicle on a mountain road near Santa Fe, New Mexico, he said the vehicle started vibrating violently, the front end went completely out of control, the trailer jackknifed and the vehicle rolled over. Everyone in the vehicle was injured, and approximately two months later Charles' father died from injuries received in the accident.

In answer to special issues submitted to them, the jury: (1) failed to find that the failure of International Harvester to provide a horizontal steering stabilizer on the front wheels of the vehicle rendered said vehicle defective; (3) failed to find that the roof of the vehicle was defective; (9) failed to find that the right front tire of the vehicle began to develop a bubble prior to the occurrence; (12) failed to find that the car dealer, Rollins Motor Company, failed to repair the steering system on the vehicle; (17) failed to find that the vehicle was unsafe after having found that it was represented as being safe for a trip; (19) found Charles M. Wenzel was negligent in operating his vehicle without performing maintenance on his tires, in driving at an excessive rate of speed, in failing to apply his brakes and in passing another vehicle and that each of such acts was a proximate cause of the occurrence; (20) found that as between Wenzel and Rollins, the negligence of Wenzel was 100% of the cause of the occurrence; (21) found that Wenzel's conduct constituted misuse of the vehicle in failing to perform maintenance of the tires on the vehicle and the trailer, in driving at an excessive speed, and in the operation of the vehicle so as to cause it to jackknife with the trailer and overturn and each of such acts of misuse was a proximate cause of the occurrence, and (22) found as between misuse and product defects, misuse was a 100% cause of the occurrence. The jury did not find any of the parties in the vehicle knew and appreciated a danger in riding in the vehicle at the time of the occurrence in question.

The Appellants present five points of error, one related to an instruction to the jury on the issue of "crash worthiness" of the vehicle, one related to the submission of the issue on misuse of the vehicle and three related to the introduction of evidence. We

shall consider the case as it relates to each Appellee.

## ROLLINS MOTOR COMPANY

The case against Rollins, the car dealer who sold the Scout and did some repairs thereon, was based upon a negligence and breach of warranty theory. The jury was asked if Rollins failed to repair the steering system of the vehicle and they answered "no." The jury found Rollins represented to Mr. Wenzel that the Scout as repaired was safe for a motor trip, that he relied on such representation, and in answer to the next issue asking if the vehicle was unsafe, the jury answered "no." The words "safe" and "unsafe" were not defined in the charge. The jury also found Mr. Wenzel guilty of four acts of negligence which were a proximate cause of the occurrence in question.

The "no" answers to special issues 12 and 17 are simply findings that the Appellants failed to carry the burden of proof on those issues. *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191 (Tex.1966). There is no point of error attacking those findings, nor is there any attack on the findings of contributory negligence. If these findings by the jury in favor of Rollins are not set aside, the judgment for the car dealer was correct. Therefore, we affirm the judgment against Rollins.

## GENERAL TIRE AND RUBBER COMPANY

On the one issue submitted with regard to the tire manufacturer, the jury was asked if the right front tire on the Scout began to develop a bubble prior to the occurrence in question and they answered "no." The jury did not answer conditionally submitted issues inquiring if said tire was defective and if this was a producing cause of the occurrence. There is no attack on the "no" answer of the jury and Appellants having failed to carry their burden of proof in the trial Court, and having made no attack on appeal upon the jury's answer, may not recover against the tire manufacturer. The judgment is also affirmed as to General Tire and Rubber Company.

## INTERNATIONAL HARVESTER COMPANY

With regard to whether the failure to provide a horizontal steering stabilizer on the front wheels of the vehicle rendered it defective, the Court instructed the jury that a product is defective if the product exposes its user to an unreasonable risk of harm when used for the purposes for which it was intended. "Unreasonable risk of harm" was said to mean that the "product must be dangerous to an extent beyond that which would be contemplated by the ordinary user with the ordinary knowledge common to the community as to its characteristics." [1]

The jury in answer to special issue No. 1 failed to find that the failure of International Harvester to provide a horizontal steering stabilizer on the front wheels of the vehicle rendered said vehicle defective. There is no attack on the answer to that issue and therefore there can be no recovery on that theory of the case. That was the only theory of recovery presented by Charles M. Wenzel and wife, Marcella Wenzel, against the manufacturer of the vehicle and therefore the judgment in favor of International Harvester must be affirmed as to these two parties.

As to Elsie Wenzel and her deceased husband, Charles Ray Wenzel, it was contended that the roof of the vehicle was defectively designed and that this resulted in their sustaining injuries which they otherwise would not have sustained. With regard to the issue of "crash worthiness" and the special issue inquiring if the roof was

---

1. This is basically the same definition given of the term "unreasonably dangerous" in the *Turner* case, infra.

defective, the charge instructs the jury as follows:

(a) That the utility of the vehicle in question to the Plaintiffs and to the public as a whole must be weighed against the gravity and likelihood of injury from its use;

(b) That you must consider the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive;

(c) That you must consider the ability of International Harvester Company to eliminate the unsafe character of the vehicle without seriously impairing its usefulness or significantly increasing its costs;

(d) That you must consider the Plaintiffs' anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

Also in this connection you are further instructed that an automobile manufacturer is under no duty to design an accident-proof vehicle but is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision.

The first four paragraphs are taken almost verbatim from the opinion of the Court in *General Motors Corporation v. Turner*, 567 S.W.2d 812 (Tex.Civ.App.— Beaumont 1978), which was decided less than two months before this case was tried. Obviously, the trial Court was following the most recent decision by a Texas appellate court when the charge was prepared in this case. Subsequent to our verdict, the Texas Supreme Court reversed the intermediate appellate court. *Turner v. General Motors Corporation*, 584 S.W.2d 844 (Tex.1979). The Court, in its opinion On Motions For Rehearing, concluded that "the evidence necessary to address the appropriate elements of balancing criteria should be overt-

ly advanced by both parties in a strict liability action; but that does not necessarily lead to the conclusion that the jury should be specifically instructed concerning these considerations." With the issue approved for use in a design defect case, the Court directed that the jury be instructed only as to the elements of utility and risk. The Court did not have to pass on the issue of whether the giving of an instruction with the four balancing factors was reversible error since the trial court's charge did not include such an instruction. Nevertheless, I conclude that an instruction as to any factors except utility and risk has been condemned and should not be used. I also conclude that the giving of such an instruction was reasonably calculated to and probably did result in harm to the Appellants. But, the other members of the Court are of the opinion that the instruction did not constitute reversible error, particularly in view of the holding in *Turner v. General Motors Corporation*, supra, "that the evidence necessary to address the appropriate element of balancing criteria should be overtly advanced by both parties in a strict liability action" and the further holding in that opinion that the decision in that case was only to apply to cases tried in the future. Accordingly, Point of Error Number One complaining about the giving of the instruction as to the defective roof is overruled.

■ Point of Error Number Two contends the trial Court erred in admitting into evidence photographs taken by Joseph Holland. Point of Error Number Three asserts error in admitting the opinion of an accident reconstruction expert. In both instances, it is asserted that there was no competent evidence that the photographer or the witness were ever able to locate the exact scene of the accident. We conclude that the proper predicate was established in order to receive the evidence in question. Although there was an issue as to the exact location on the highway where the accident occurred, we believe the complaints raised

go the the weight and not the admissibility of the evidence. *Briones v. Levine's Department Store, Inc.*, 435 S.W.2d 876 (Tex. Civ.App.—Austin 1968) affirmed 446 S.W.2d 7 (Tex.1969); *Dofner v. Branard*, 236 S.W.2d 544 (Tex.Civ.App.—San Antonio 1951, writ ref'd n. r. e.).

▬ Point of Error Number Four concerns the admissibility of testimony from the investigating officer as to wind conditions in the area where the accident occurred. We conclude that generally testimony should be allowed as to conditions on the date of the accident about which the witness had actual knowledge, but not as to conditions generally in the area. *Pavlos v. Albuquerque National Bank*, 82 N.M. 759, 487 P.2d 187 (1971); Annotation, Admissibility of Nonexpert Opinion Testimony as to Weather Conditions, 56 A.L.R.3d 575, sec. 3(a) and (b) (1974). In this case we conclude that the testimony from the investigating officer concerning gusts of wind in the canyon was not reversible error. The officer testified that Mr. Wenzel told him both at the scene of the accident and at the hospital that it was the wind that caught him and caused him to lose control. In addition, Mr. Wenzel stated in a signed statement given four days after the accident that there was a slight head wind and "at a speed of about 50 miles per hour, the rear end of the Scout began to fishtail." That statement was diametrically opposed to his testimony at the time of trial that all of his trouble began with a shimmy in the front end of the vehicle. Since Mr. Wenzel acknowledged that there was wind blowing in the canyon where the accident occurred, and since the officer did not attempt to estimate the gusts of wind in the canyon, and since no controlling issue was submitted to the jury with regard to the wind being a factor in the happening of the accident, we conclude that the one statement by the officer about gusts in the canyon was not reversible error in a case where the testimony comprises over 1,000 pages of evidence, nearly all of which is related to the happening of the accident. Point of Error Number Four is overruled.

The Appellants' last point of error asserts that the trial Court should not have submitted special issue No. 21 which inquired as to "misuse" of the vehicle because the acts inquired about would not constitute misuse as related to a products liability case. The issue inquired if Mr. Wenzel misused the vehicle in (a) failing to perform required maintenance on the tires of the vehicle, (b) failing to perform required maintenance on the tires of the trailer, (c) overloading the trailer, (d) operating the vehicle at an excessive rate of speed while towing the trailer under the conditions and circumstances then existing, and (3) operating the vehicle in such a way that it jackknifed with the trailer and caused the vehicle to overturn.

▬ Certainly, the most recent case law supports the submission of an issue on misuse where the user contributed to the cause of his harm by unforeseeable use of the product. *General Motors Corporation v. Hopkins*, 548 S.W.2d 344 (Tex.1977). On occasions, the issue of misuse has been applied with regard to improper inflation of tires. *McDevitt v. Standard Oil Company of Texas*, 391 F.2d 364 (5th Cir. 1968); *Edwards v. Sears, Roebuck and Company*, 512 F.2d 276 (5th Cir. 1975). If the misuse is a concurring proximate cause of the damaging event, it will result in a reduction of the plaintiff's recovery in proportion to the percent of damage caused by such misuse. *General Motors Corporation v. Hopkins*, supra.

A major problem arises as to whether particular conduct constitutes misuse which should be submitted to the jury, or whether such conduct is nothing more than contributory negligence which should not be submitted. The fact that the conduct must be an "unforeseeable use" does not simplify the matter for either the trial court or the appellate court. From a practical standpoint, that requirement almost totally abolishes the defense of misuse.

After the decision of the *Hopkins* case, the Supreme Court of California in *Daly v. General Motors Corporation*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978), announced a rule which greatly simplifies the defensive issues in a strict liability case and equitably apportions the matter of damages.

The Court in that case abolished the defense of assumption of risk as a complete defense and also abolished the defense of misuse, which involves concepts of negligence, and adopted comparative fault, not as a defense, but solely as a basis for apportioning the loss between two wrongdoers. Thus, the defendant will be liable without regard to fault on a strict liability principle, but the plaintiff's damages will be reduced in proportion to his own fault. Under such a theory, assumption of risk, which entails elements of contributory negligence, is included with that defense, not to prevent recovery, but only with regard to recoverable damages. Likewise, issues as to misuse and contributory negligence which are not easily separated may be submitted solely for the purposes of deciding the amount of damages recoverable, without having to determine if the conduct inquired about constitutes "misuse" or in fact is nothing more than "negligent conduct." Such a system does not place upon one party the entire burden of a loss for which two are responsible. Of course, whether or not the California rule is adopted must necessarily be the responsibility of our Supreme Court which moved in that direction with its decision in the *Hopkins* case.

Certainly abolishing assumption of risk in strict liability cases would be consistent with the abolishment of such defense in negligence cases. See *Farley v. M M Cattle Company*, 529 S.W.2d 751 (Tex.1975). At the same time, to reduce damages in products cases for any concurring fault upon the part of the plaintiff would have a tendency to make issues uniform in both negligence and strict liability cases. To remove the "unforeseeable use" element would also make the issues uniform in both types of cases and provide a reasonable basis for the jury to allocate fault based upon a producing cause (without foreseeability) resulting from the defective product and a proximate cause (with foreseeability) resulting from an actor's conduct or omission, both of which concurred to cause an injury. Thus, as in the *Daly* case, one who drives a vehicle without use of a seat belt must bear some fault along with a manufacturer who builds a car with defective door latches. And, as in our case, one who turns a vehicle upside down must bear some fault along with a manufacturer who may design a defective roof.

But such a system of comparative fault as adopted in California can have real meaning only if the element of "unforeseeability" is removed from the defensive issue, whether it be called "misuse" or "comparative fault" or "comparative negligence." Certainly in the *Daly* case the manufacturer could foresee that its vehicle would be driven by a driver who did not use the installed seat belts because many drivers refuse to use such safety devices. Likewise, in our case the manufacturer could foresee that some of the Scouts which it sold would be rolled over on the roof because that happens daily in our society to all types of vehicles. But, if the reparations system is not designed to place upon one party the entire burden of a loss for which two are responsible, then both the issues of liability and defense must be meaningful and have real application. The California rule meets that test.

In the *Daly* case, the Court, in adopting principles of comparative fault, noted:

Plaintiffs will continue to be relieved of proving that the manufacturer or distributor was negligent in the production, design, or dissemination of the article in question. Defendant's liability for injuries caused by a defective product remains strict. The principle of protecting the defenseless is likewise preserved, for plaintiff's recovery will be reduced *only*

to the extent that his own lack of reasonable care contributed to his injury. The cost of compensating the victim of a defective product, albeit proportionately reduced, remains on defendant manufacturer, and will, through him, be 'spread among society.' However, we do not permit plaintiff's own conduct relative to the product to escape unexamined, and as to that share of plaintiff's damages which flows from his own fault we discern no reason of policy why it should, . . . be borne by others.

The net result of such a rule is that the manufacturer continues to have incentive to make and sell a product free of defects and a user has incentive to exercise ordinary care and not improperly use any product, even one with a design or manufacturing defect. A system which is fair and equitable to both the manufacturer and user of a product, and which at the same time simplifies the special issue submission in product cases, can't be all bad. But, since the judgment of the trial Court is affirmed by the majority of the Court, the defensive issues of misuse have become immaterial and Point of Error Number Five is overruled.

### CROSS–POINTS

By way of cross-points, it is asserted that the trial court erred in submitting to the jury special issues with regard to the doctrine of crash worthiness because there was no evidence or insufficient evidence to raise the issues. If there is some evidence raising an issue, the trial court is required to submit the issue even though the evidence may be insufficient to support an affirmative answer. *Volkswagen of America, Inc. v. Licht,* 544 S.W.2d 442 (Tex. Civ.App.—El Paso 1976, no writ). These cross-points, therefore, present only a "no evidence" point which requires that we review the evidence under the test set forth in *Garza v. Alviar,* 395 S.W.2d 821 (Tex. 1965). That test requires that we consider only the evidence and inferences tending to support the submission of the issue and disregard all evidence and inferences to the contrary. On the basis of that standard of review, these cross-points are overruled.

One last cross-point asserts that the cause of action for the wrongful death of Charles Ray Wenzel was barred by limitations. It is asserted that the Texas Wrongful Death and Survival Statute did not have extraterritorial effect at the time of the accident and that the New Mexico statute of limitations barred the wrongful death claim which was first asserted under New Mexico law by the filing of the Plaintiffs' Third Trial Amendment. It is not necessary for us to pass on that issue because the plea of limitations was not properly raised by an answer filed in the trial Court as provided for in Rule 94, Tex.R.Civ.P.

The judgment of the trial Court is affirmed.

OSBORN, Justice, dissenting.

I respectfully dissent with regard to the overruling of Point of Error Number One, and would reverse and remand the case for new trial as to Elsie Wenzel and those claiming rights as survivor of Charles Ray Wenzel, deceased, subject, of course, to a proper determination of the issue of the limitations, if properly raised upon a new trial.

### ON MOTION FOR REHEARING

OSBORN, Justice.

The Appellants and the Appellee, International Harvester Company, have filed motions for rehearing. Those motions have been considered and they are overruled.

International Harvester Company asserts in its Point of Error No. 2 in its motion that the trial Court erred in overruling its special exception to the cause of action asserted for the wrongful death of Charles R. Wenzel. Although the issue of limitations was not properly raised, as noted in our original opinion, the special exception

did raise a proper issue as to the asserted cause of action under Texas law for death resulting from injuries sustained in New Mexico. It appears that the special exception to the statutory cause of action which was based on an accident prior to the 1975 amendment of Article 4678 should have been sustained. *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182 (Tex.1968); *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex.1979); *Cass v. Estate of McFarland*, 564 S.W.2d 107 (Tex.Civ.App.—El Paso 1978, no writ). Nevertheless, since the judgment in favor of International Harvester Company has been affirmed, the issue raised by the point of error is moot.