Opal I. BURKS, Plaintiff–Appellant,

Texas Employers Insurance Company, Intervenor–Appellant,

v.

The FIRESTONE TIRE & RUBBER COMPANY, Defendant–Third Party Plaintiff–Appellee,

and

Kelsey–Hayes Company, Third Party Defendant–Appellee,

Ford Motor Company, Third Party Defendant.

No. 79–1774.

United States Court of Appeals, Fifth Circuit.

Unit A

Jan. 8, 1981.

James J. Hultgren, Dallas, Tex., for Opal
I. Burks.

Tom J. Stollenwerck, Dallas, Tex., for
Texas Employers Ins. Co.

C. Vernon Hartline, Jr., Dallas, Tex., for
Firestone Tire & Rubber Co.

Strasburger & Price, Royal H. Brin, Jr.,
Dallas, Tex., for Kelsey–Hayes.

Before AINSWORTH, Circuit Judge,
KUNZIG, Judge,* and RANDALL, Circuit
Judge.

KUNZIG, Judge.

In this products liability action, two tire
rim manufacturers are being sued for the
alleged wrongful death of appellant's late
husband, killed by the explosion of a tire
rim manufactured by the two companies.
At trial, a key issue was whether the design
of the tire rim involved in the accident was
defective. Early in the proceedings, de-
fendants stipulated that at the time when
the tire rim in question was marketed, it
would have been feasible to market an al-
ternative tire rim with a non–explosive de-
sign. In its charge, the trial court instruct-
ed the jury that it should balance the utility
of the design actually marketed against the
risk of harm created in determining wheth-
er the product design was defective. The
jury found that defectiveness had not been
proven and, accordingly, rendered its ver-
dict for defendants. A take nothing judg-
ment followed. Appellant–plaintiff below—
now contends that the giving of the "bal-
ancing" instructions was improper in view
of the defendants' earlier stipulation as to
feasibility. We reject this argument and
leave the judgment below intact.

On September 8, 1976, James Burks, a
garage mechanic, sustained fatal injuries
when a two–piece RH5° tire rim exploded
in his face as he was securing a wheel
assembly to a truck. On July 8, 1977,
Burks' widow, Opal Burks, brought this di-
versity action seeking damages for the al-
leged wrongful death of her husband. Mrs.
Burks proceeded under the theory of strict
liability in tort, the substantive law of Tex-
as governing.

Before commencement of testimony, de-
fendants stipulated the feasibility of mar-
keting a multi–piece rim at the time the
two–piece RH5° rim in question was mar-
keted–1966–which apparently would have
been free of the explosive risk manifested
in the Burks accident. While the actual
stipulation was not made part of the record,
counsel for Firestone verbally entered its
essentials into the record during a mid–trial
colloquy before the bench.[1] Defendants en-
tered the stipulation to gain the benefit of
Federal Rule of Evidence 407, which ex-
cludes evidence of subsequent remedial
measures to prove the feasibility of taking
such measures at the time of an accident if
feasibility is not controverted.

The district court submitted the case to
the jury upon a general verdict, together
with special interrogatories, including the
question whether plaintiff had proven by a
preponderance of the evidence that the de-
sign of the two–piece RH5° tire rim was
defective. To enable the jury to make an-

* Judge of the United States Court of Claims.

1. Counsel's statement was as follows:
   We would like the record to show that
   Firestone does stipulate that at the time of
   the manufacture of the side ring in question,
   that is 1966, it was feasible to manufacture a
   multi-piece wheel of a different design than
   the RH5 and in fact this Defendant did design
   and sell other multi- piece rims in 1966,
   which did not employ an internal interference
   fit design and thus the static condition would
   eliminate the so- called explosive separation.

swer to this question, the court instructed the jury as follows:

> A "defective design" is a design that is unreasonably dangerous to the user. The requirement that the design of a product render the product unreasonably dangerous in order to be defective in the eyes of the law reflects a realization that many products have both utility and danger. You must weigh the utility of the design (here, the two–piece rim) against the risk of harm created. A product is unreasonably dangerous if it is manufactured in such a way that it presents to a user of such product a threat of injury such that: (1) a prudent manufacturer, who was aware of the risk of harm, would not have placed it in the channels of commerce in that condition, or (2) in such condition it would not meet the reasonable expectations of the ordinary consumer as to safety.

No objection to the instruction appears in the record. The jury answered the "defective design" interrogatory in the negative and, accordingly, found for defendants. The court entered its take nothing judgment on February 3, 1979. This appeal followed.

■ Appellant contends that, in view of defendants' concession as to the feasibility of marketing an alternative, non–explosive tire rim at the time when the RH5° tire rim in question was marketed, the district court committed reversible error by instructing the jury to weigh the utility of the design against the risk of harm created in determining whether the design of the RH5° tire rim was defective. In making this argu-

ment, appellant faces the initial obstacle that no objection to the instruction appears of record. Under Fed.R.Civ.P. 51, "No party may assign as error the giving or the failing to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." In its discretion, the reviewing court may consider grounds of appeal not properly objected to at trial when there is plain error or manifest injustice. *See Bissett v. Ply–Gem Industries, Inc.,* 533 F.2d 142, 145–146 (5th Cir. 1976); *Wirtz v. International Harvester Co.,* 331 F.2d 462, 465–466 (5th Cir.), *cert. denied,* 379 U.S. 845, 85 S.Ct. 36, 13 L.Ed.2d 50 (1964). This case, however, evinces no such fundamental procedural defect. Instead, the proceedings were impeccable.

■ Under the theory of strict liability expressed in § 402A of the Restatement (Second) of Torts [2] adopted by the Supreme Court of Texas, *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787, 789–790 (Tex. 1967), a manufacturer who sells a product in a "defective condition unreasonably dangerous" is strictly liable for physical harm caused by the defect to the product's user even though the manufacturer "has exercised all possible care in the preparation ... of his product." A product is "unreasonably dangerous" only if it is "defective",[3] whether designed defectively or improperly and produced as designed, or designed perfectly but improperly or defectively produced. *Henderson v. Ford Motor Co.,* 519 S.W.2d 87, 92 (Tex.1974).

2. § 402A. Special Liability of Product for Physical Harm to User or Consumer:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

3. As used in the Restatement, the terms "defective" and "unreasonably dangerous" are synonymous. *Mitchell v. Fruehauf Corp.,* 568 F.2d 1139, 1142 n.1 (5th Cir. 1978); *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1087 n.20 (5th Cir. 1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

In a leading 1973 products liability case governed by the substantive law of Texas, *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1087 (5th Cir. 1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974), this court held that

> The requirement that the defect render the product "unreasonably dangerous" reflects a realization that many products have both utility and danger. The determination that a product is unreasonably dangerous, or not reasonably safe, means that, on balance, the utility of the product does not outweigh the magnitude of the danger.

We have since reaffirmed *Borel* upon a number of occasions. *See Hagans v. Oliver Machinery Co.*, 576 F.2d 97, 99 (5th Cir. 1978); *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1274 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974).

In a 1975 products liability case involving cleatless scaffolding equipment, the Texas Supreme Court, speaking to the question of whether there was evidence to support the jury finding that the product was unreasonably dangerous, wrote: "Thus, the jury was justified in concluding that the risk of harm outweighed the utility of the cleatless scaffold boards and that they were therefore unreasonably dangerous." *Rourke v. Garza*, 530 S.W.2d 794, 799 (Tex.1975). In *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979), the Texas court again turned to the strict liability standard of defectiveness as applied in design defect cases. The court definitively held that the jury should be instructed to weigh the "utility" of the product against the "risks involved in its use" in determining whether the product design was defective. *Id.* at 847. *Accord, Boatland of Houston Inc. v. Bailey*, 609 S.W.2d 743 (Tex.1980); *Wenzel*

*v. Rollins Motor Co.*, 598 S.W.2d 895, 899 (Tex.Civ.App.1980); *Bell Helicopter Co. v. Bradshaw*, 594 S.W.2d 519, 530 (Tex.Civ. App.1979).

■ Appellant contends that the submission of a balancing instruction was improper in view of the manufacturers' earlier stipulation as to the feasibility of a safer alternative. This view has no merit. First, the argument is squarely at odds with the many holdings of this court and the Texas courts to the effect that balancing applies without exception. *See supra*, slip op. at 633, at 1155. Second, to the extent that feasibility has thus far come into play in Texas design defect cases, it has consistently been treated as a factor to be taken into consideration when applying balancing, not a factor precluding balancing or rendering it superfluous. *See Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1274 n.17 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743 (Tex.1980); *Bell Helicopter Co. v. Bradshaw*, 594 S.W.2d 519, 530 (Tex.Civ.App.1979).

According to *Webster's Third New International Dictionary*, "feasible" simply means "capable of being done". By itself, the notion of feasibility imparts no information as to the relative cost of various production alternatives. This being the case, how could the notion seriously be maintained that a mere stipulation as to feasibility somehow displaces balancing or resolves all the problems associated therewith? In actuality, the feasibility of safer alternatives is merely the starting point, hardly the culmination, of balancing analysis.

■ We believe these considerations are dispositive of appellant's contention. The trial court committed no error.[4]

---

4. We wish to take note of the fact that the instruction propounded to the jury in this case was actually a synthesis of three separate elements: the "balancing test", as well as the "prudent manufacturer" and "ordinary consumer" tests. The background of the balancing test has already been set forth in the body of this opinion. The prudent manufacturer and ordinary consumer tests stem from two Texas

decisions of the mid–1970's: *Henderson v. Ford Motor Co.*, 519 S.W.2d 87, 92 (Tex.1974) and *General Motors Corp. v. Hopkins*, 548 S.W.2d 344, 347 n.1 (Tex.1977). In *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979), the Texas Supreme Court recently overruled *Henderson* and *Hopkins*, holding that henceforth in the trial of strict liability cases involving design defects, only the balancing instruction will be

**1156**

All other arguments and exceptions raised by appellant, though not directly addressed by this opinion, have been examined and found to be without merit.

Accordingly, the judgment of the lower court is hereby

AFFIRMED.

given. *Id.* at 847, 851. The *Turner* court further indicated, however, that the jury is *not* to be instructed in terms of the specific factors which may be relevant to a comparison of risk and utility, *id.* at 847, 848–849. While "the evidence necessary to address the appropriate elements of balancing criteria should be overtly advanced by both parties in a strict liability action", *id.* at 847, the jury should merely "be instructed in general terms to consider the utility of the product and the risks involved in its use", *id.* at 847. *See id.* at 847 n.1 (model jury instruction); *Wenzel v. Rollins Motor Co.,* 598 S.W.2d 895, 899 (Tex.Civ.App.1980). *See gen-* erally *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743 (Tex.1980); *Bell Helicopter Co. v. Bradshaw,* 594 S.W.2d 519, 530 (Tex.Civ.App. 1979).

The *Turner* court expressly limited the applicability of its holding to "the trial of design defect strict liability cases after the date on which our judgment herein becomes final". *Id.* at 851. *Turner* bears the date of June 13, 1979. Accordingly, *Turner* in no way affects the validity of the trial proceedings in this case, since these terminated upon February 3, 1979. *See Wenzel v. Rollins Motor Co.,* 598 S.W.2d 895, 899 (Tex.Civ.App.1980).