633 F.2d 1152
 7 Fed. R. Evid. Serv. 563
 Opal I. BURKS, Plaintiff-Appellant,
Texas Employers Insurance Company, Intervenor-Appellant,
v.
The FIRESTONE TIRE & RUBBER COMPANY, Defendant-Third Party
Plaintiff-Appellee,
and
Kelsey-Hayes Company, Third Party Defendant-Appellee,
Ford Motor Company, Third Party Defendant.
 No. 79-1774.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A
 Jan. 8, 1981.
 James J. Hultgren, Dallas, Tex., for Opal I. Burks.
 Tom J. Stollenwerck, Dallas, Tex., for Texas Employers Ins. Co.
 C. Vernon Hartline, Jr., Dallas, Tex., for Firestone Tire & Rubber Co.
 Strasburger & Price, Royal H. Brin, Jr., Dallas, Tex., for Kelsey-Hayes.
 Appeals from the United States District Court for the Northern District of Texas.
 Before AINSWORTH, Circuit Judge, KUNZIG, Judge,* and RANDALL, Circuit Judge.
 KUNZIG, Judge.
 
 
 1
 In this products liability action, two tire rim manufacturers are being sued for the alleged wrongful death of appellant's late husband, killed by the explosion of a tire rim manufactured by the two companies. At trial, a key issue was whether the design of the tire rim involved in the accident was defective. Early in the proceedings, defendants stipulated that at the time when the tire rim in question was marketed, it would have been feasible to market an alternative tire rim with a non-explosive design. In its charge, the trial court instructed the jury that it should balance the utility of the design actually marketed against the risk of harm created in determining whether the product design was defective. The jury found that defectiveness had not been proven and, accordingly, rendered its verdict for defendants. A take nothing judgment followed. Appellant-plaintiff below-now contends that the giving of the "balancing" instructions was improper in view of the defendants' earlier stipulation as to feasibility. We reject this argument and leave the judgment below intact.
 
 
 2
 On September 8, 1976, James Burks, a garage mechanic, sustained fatal injuries when a two-piece RH5o tire rim exploded in his face as he was securing a wheel assembly to a truck. On July 8, 1977, Burks' widow, Opal Burks, brought this diversity action seeking damages for the alleged wrongful death of her husband. Mrs. Burks proceeded under the theory of strict liability in tort, the substantive law of Texas governing.
 
 
 3
 Before commencement of testimony, defendants stipulated the feasibility of marketing a multi-piece rim at the time the two-piece RH5o rim in question was marketed-1966-which apparently would have been free of the explosive risk manifested in the Burks accident. While the actual stipulation was not made part of the record, counsel for Firestone verbally entered its essentials into the record during a mid-trial colloquy before the bench.[1] Defendants entered the stipulation to gain the benefit of Federal Rule of Evidence 407, which excludes evidence of subsequent remedial measures to prove the feasibility of taking such measures at the time of an accident if feasibility is not controverted.
 
 
 4
 The district court submitted the case to the jury upon a general verdict, together with special interrogatories, including the question whether plaintiff had proven by a preponderance of the evidence that the design of the two-piece RH5o tire rim was defective. To enable the jury to make answer to this question, the court instructed the jury as follows:
 
 
 5
 A "defective design" is a design that is unreasonably dangerous to the user. The requirement that the design of a product render the product unreasonably dangerous in order to be defective in the eyes of the law reflects a realization that many products have both utility and danger. You must weigh the utility of the design (here, the two-piece rim) against the risk of harm created. A product is unreasonably dangerous if it is manufactured in such a way that it presents to a user of such product a threat of injury such that: (1) a prudent manufacturer, who was aware of the risk of harm, would not have placed it in the channels of commerce in that condition, or (2) in such condition it would not meet the reasonable expectations of the ordinary consumer as to safety.
 
 
 6
 No objection to the instruction appears in the record. The jury answered the "defective design" interrogatory in the negative and, accordingly, found for defendants. The court entered its take nothing judgment on February 3, 1979. This appeal followed.
 
 
 7
 Appellant contends that, in view of defendants' concession as to the feasibility of marketing an alternative, non-explosive tire rim at the time when the RH5o tire rim in question was marketed, the district court committed reversible error by instructing the jury to weigh the utility of the design against the risk of harm created in determining whether the design of the RH5o tire rim was defective. In making this argument, appellant faces the initial obstacle that no objection to the instruction appears of record. Under Fed.R.Civ.P. 51, "No party may assign as error the giving or the failing to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." In its discretion, the reviewing court may consider grounds of appeal not properly objected to at trial when there is plain error or manifest injustice. See Bissett v. Ply-Gem Industries, Inc., 533 F.2d 142, 145-146 (5th Cir. 1976); Wirtz v. International Harvester Co., 331 F.2d 462, 465-466 (5th Cir.), cert. denied, 379 U.S. 845, 85 S.Ct. 36, 13 L.Ed.2d 50 (1964). This case, however, evinces no such fundamental procedural defect. Instead, the proceedings were impeccable.
 
 
 8
 Under the theory of strict liability expressed in § 402A of the Restatement (Second) of Torts[2] adopted by the Supreme Court of Texas, McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, 789-790 (Tex.1967), a manufacturer who sells a product in a "defective condition unreasonably dangerous" is strictly liable for physical harm caused by the defect to the product's user even though the manufacturer "has exercised all possible care in the preparation ... of his product." A product is "unreasonably dangerous" only if it is "defective",[3] whether designed defectively or improperly and produced as designed, or designed perfectly but improperly or defectively produced. Henderson v. Ford Motor Co., 519 S.W.2d 87, 92 (Tex.1974).
 
 
 9
 In a leading 1973 products liability case governed by the substantive law of Texas, Borel v. Fibreboard Paper Products Corp., 493 F.2d 1076, 1087 (5th Cir. 1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974), this court held that
 
 
 10
 The requirement that the defect render the product "unreasonably dangerous" reflects a realization that many products have both utility and danger. The determination that a product is unreasonably dangerous, or not reasonably safe, means that, on balance, the utility of the product does not outweigh the magnitude of the danger.
 
 
 11
 We have since reaffirmed Borel upon a number of occasions. See Hagans v. Oliver Machinery Co., 576 F.2d 97, 99 (5th Cir. 1978); Reyes v. Wyeth Laboratories, 498 F.2d 1264, 1274 (5th Cir.), cert. denied, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974).
 
 
 12
 In a 1975 products liability case involving cleatless scaffolding equipment, the Texas Supreme Court, speaking to the question of whether there was evidence to support the jury finding that the product was unreasonably dangerous, wrote: "Thus, the jury was justified in concluding that the risk of harm outweighed the utility of the cleatless scaffold boards and that they were therefore unreasonably dangerous." Rourke v. Garza, 530 S.W.2d 794, 799 (Tex.1975). In Turner v. General Motors Corp., 584 S.W.2d 844 (Tex.1979), the Texas court again turned to the strict liability standard of defectiveness as applied in design defect cases. The court definitively held that the jury should be instructed to weigh the "utility" of the product against the "risks involved in its use" in determining whether the product design was defective. Id. at 847. Accord, Boatland of Houston Inc. v. Bailey, 609 S.W.2d 743 (Tex.1980); Wenzel v. Rollins Motor Co., 598 S.W.2d 895, 899 (Tex.Civ.App.1980); Bell Helicopter Co. v. Bradshaw, 594 S.W.2d 519, 530 (Tex.Civ.App.1979).
 
 
 13
 Appellant contends that the submission of a balancing instruction was improper in view of the manufacturers' earlier stipulation as to the feasibility of a safer alternative. This view has no merit. First, the argument is squarely at odds with the many holdings of this court and the Texas courts to the effect that balancing applies without exception. See supra, slip op. at 633, at 1155. Second, to the extent that feasibility has thus far come into play in Texas design defect cases, it has consistently been treated as a factor to be taken into consideration when applying balancing, not a factor precluding balancing or rendering it superfluous. See Reyes v. Wyeth Laboratories, 498 F.2d 1264, 1274 n.17 (5th Cir.), cert. denied, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); Boatland of Houston, Inc. v. Bailey, 609 S.W.2d 743 (Tex.1980); Bell Helicopter Co. v. Bradshaw, 594 S.W.2d 519, 530 (Tex.Civ.App.1979).
 
 
 14
 According to Webster's Third New International Dictionary, "feasible" simply means "capable of being done". By itself, the notion of feasibility imparts no information as to the relative cost of various production alternatives. This being the case, how could the notion seriously be maintained that a mere stipulation as to feasibility somehow displaces balancing or resolves all the problems associated therewith? In actuality, the feasibility of safer alternatives is merely the starting point, hardly the culmination, of balancing analysis.
 
 
 15
 We believe these considerations are dispositive of appellant's contention. The trial court committed no error.[4]
 
 
 16
 All other arguments and exceptions raised by appellant, though not directly addressed by this opinion, have been examined and found to be without merit.
 
 
 17
 Accordingly, the judgment of the lower court is hereby
 
 
 18
 AFFIRMED.
 
 
 
 *
 Judge of the United States Court of Claims
 
 
 [1]
 Counsel's statement was as follows:
 We would like the record to show that Firestone does stipulate that at the time of the manufacture of the side ring in question, that is 1966, it was feasible to manufacture a multi-piece wheel of a different design than the RH5 and in fact this Defendant did design and sell other multi-piece rims in 1966, which did not employ an internal interference fit design and thus the static condition would eliminate the so-called explosive separation.
 
 
 [2]
 § 402A. Special Liability of Product for Physical Harm to User or Consumer:
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 (2) The rule stated in Subsection (1) applies although
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
 Restatement (Second) of Torts § 402A (1965).
 
 
 [3]
 As used in the Restatement, the terms "defective" and "unreasonably dangerous" are synonymous. Mitchell v. Fruehauf Corp., 568 F.2d 1139, 1142 n.1 (5th Cir. 1978); Borel v. Fibreboard Paper Products Corp., 493 F.2d 1076, 1087 n.20 (5th Cir. 1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974)
 
 
 [4]
 We wish to take note of the fact that the instruction propounded to the jury in this case was actually a synthesis of three separate elements: the "balancing test", as well as the "prudent manufacturer" and "ordinary consumer" tests. The background of the balancing test has already been set forth in the body of this opinion. The prudent manufacturer and ordinary consumer tests stem from two Texas decisions of the mid-1970's: Henderson v. Ford Motor Co., 519 S.W.2d 87, 92 (Tex.1974) and General Motors Corp. v. Hopkins, 548 S.W.2d 344, 347 n.1 (Tex.1977). In Turner v. General Motors Corp., 584 S.W.2d 844 (Tex.1979), the Texas Supreme Court recently overruled Henderson and Hopkins, holding that henceforth in the trial of strict liability cases involving design defects, only the balancing instruction will be given. Id. at 847, 851. The Turner court further indicated, however, that the jury is not to be instructed in terms of the specific factors which may be relevant to a comparison of risk and utility, id. at 847, 848-849. While "the evidence necessary to address the appropriate elements of balancing criteria should be overtly advanced by both parties in a strict liability action", id. at 847, the jury should merely "be instructed in general terms to consider the utility of the product and the risks involved in its use", id. at 847. See id. at 847 n.1 (model jury instruction); Wenzel v. Rollins Motor Co., 598 S.W.2d 895, 899 (Tex.Civ.App.1980). See generally Boatland of Houston, Inc. v. Bailey, 609 S.W.2d 743 (Tex.1980); Bell Helicopter Co. v. Bradshaw, 594 S.W.2d 519, 530 (Tex.Civ.App.1979)
 The Turner court expressly limited the applicability of its holding to "the trial of design defect strict liability cases after the date on which our judgment herein becomes final". Id. at 851. Turner bears the date of June 13, 1979. Accordingly, Turner in no way affects the validity of the trial proceedings in this case, since these terminated upon February 3, 1979. See Wenzel v. Rollins Motor Co., 598 S.W.2d 895, 899 (Tex.Civ.App.1980).