Lockett v. Moore 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-042-CV




KERRY L. LOCKETT, M.D.,



 APPELLANT


vs.





JIMMY MOORE, 



 APPELLEE


 




FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT



NO. 6317, HONORABLE D. V. HAMMOND, JUDGE PRESIDING



 




PER CURIAM


 Appellant Kerry Lockett, M.D., sued Jimmy Moore, San Saba National Bank, and
San Saba Hospital, Inc., alleging fraud and promissory estoppel. After a jury trial, the trial court
rendered judgment on the verdict against Lockett. Lockett perfected appeal as to Moore, the
bank, and the hospital; because this Court has granted the parties' joint motion to dismiss the
appeal as to the hospital and the bank's receiver, the only remaining appellee is Moore. 

 On appeal, Lockett brings three points of error concerning the jury charge. We
will affirm the trial court's judgment.



BACKGROUND


 Lockett's medical education was partly financed by a scholarship from the National
Health Service Corps. In return for his scholarship, Lockett was obligated to work three years
as a doctor in an area selected by the health service. One possible work arrangement was private
practice in an area designated as having a national health manpower shortage. When he graduated
from medical school in 1984, Lockett sought a private-practice option in the San Saba area, but
the option was not available there. He then chose the option of working for the Public Health
Service. Lockett received a commission as a Public Health Service officer and was assigned to
an Indian reservation in Roosevelt, Utah.

 Lockett testified that in April 1985, Moore, the administrator of the San Saba
Hospital, phoned him and said that he needed a physician to work at the hospital immediately. 
Lockett was interested because he had grown up around San Saba, but told Moore that he still
owed the National Health Service over two years of service. Moore responded that San Saba had
recently been placed on the national health manpower shortage list and that getting Lockett's
obligation transferred to San Saba would pose no problem. Lockett testified that Moore stated that
he could and would get this obligation transferred. Lockett also testified, however, that during
this phone conversation with Moore, "I [Lockett] did tell him that, you know, since San Saba was
placed in a national health manpower shortage area, then it could be done where they could go
through the appropriate personnel, use the people that he knew, the important personnel that he
knew that could get it done and that the transfer could be made." Lockett agreed to discuss
Moore's offer with his wife.

 Moore called Lockett again at the end of April and repeated his immediate need for
a doctor. Moore specified the items he would offer Lockett to come to San Saba; one item was
Moore's promise to "take care of" Lockett's national health service obligation. Lockett testified
that Moore was adamant in stating that he could "take care of" Lockett's obligation and that
Moore insisted that there was no question about it. Lockett stated that during his phone
conversations with Moore, Moore said that he knew people who could transfer Lockett's service
obligation. Lockett asked Moore to send him a written offer. 

 A few days later, Lockett received Moore's offer, titled "Letter of Agreement,
Contract of Understanding." By the time he received the agreement, Lockett had terminated his
position with the Roosevelt Health Service and packed his family's goods. The agreement
contained all the terms discussed except Moore's promise to arrange Lockett's transfer. Lockett
testified that when he phoned Moore about this omission, Moore told him that as a fair and honest
business person he could not obligate the persons who could arrange the transfer until he talked
to them and that he had not had time to talk to them yet. Moore said that getting the service
obligation straightened out would be no problem as soon as Lockett arrived. Having already
terminated his job and packed, Lockett proceeded to San Saba.

 The "Letter of Agreement" provided that Lockett would work two years at the San
Saba Hospital. Moore signed the agreement before sending it to Lockett; Lockett, however, never
signed it. Lockett testified that one reason he did not sign the agreement was that he knew that
his ability to stay two years depended on whether his service obligation could be transferred to
San Saba. He knew that if the obligation were not transferred, he would have to move within a
year. Lockett testified that he did not want to be bound by the contract if his obligation were not
transferred.



DISCUSSION


 In point of error one, Lockett claims that the trial court erred in refusing to submit
his jury questions on promissory estoppel. Because Lockett never accepted Moore's offer by
signing it, the two never entered a contract. Lockett may nevertheless state a cause of action
based on the theory of promissory estoppel under section 90 of the Restatement (Second) of
Contracts. Wheeler v. White, 398 S.W.2d 93, 95 (Tex. 1965); see Restatement (Second) of
Contracts § 90 (1979); Michael B. Metzger & Michael J. Phillips, The Emergence of Promissory
Estoppel As an Independent Theory of Recovery, 35 Rutgers L. Rev. 472 (1983).

 Lockett properly requested the following question on estoppel: "Did Dr. Lockett
substantially rely, to his detriment, on Moore's promise, if any, to arrange for the transfer of Dr.
Lockett's governmental service obligation to the San Saba area, and was Dr. Lockett's reliance
foreseeable by Moore?" See Tex. R. Civ. P. 274, 278. Lockett also requested a conditional
question on damages. The trial court endorsed each request "refused." Lockett was entitled to
submission of his questions on promissory estoppel only if some evidence existed on each element
of estoppel. Tex. R. Civ. P. 278. Wenzel v. Rollins Motor Co., 598 S.W.2d 895, 902 (Tex. Civ.
App.--El Paso 1980, writ ref'd n.r.e.); Connally v. Home Ins. Co., 525 S.W.2d 252, 254 (Tex.
Civ. App.--Amarillo 1975, writ ref'd n.r.e.). We therefore review the evidence in the light most
favorable to Lockett, disregarding contrary evidence and inferences. Garza v. Alviar, 395 S.W.2d
821, 823 (Tex. 1965); Wenzel, 598 S.W.2d at 902. An absence of evidence on any one element
of estoppel is fatal to the theory. Connally, 525 S.W.2d at 254. 

 The elements of promissory estoppel are: (1) a promise, (2) foreseeability of the
promisor's reliance on it, and (3) substantial reliance by the promisee to his detriment. English
v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983); Adams v. Petrade Int'l, Inc., 754 S.W.2d 696, 707
(Tex. App.--Houston [1st Dist.] 1988, writ denied). Promissory estoppel incorporates all the
elements of equitable estoppel, except that the representation made is promissory rather than as
to an existing fact. Clifton v. Ogle, 526 S.W.2d 596, 603 (Tex. Civ. App.--Fort Worth 1975, writ
ref'd n.r.e.); see Norris of Houston, Inc. v. Gafas, 562 S.W.2d 894, 898 (Tex. Civ.
App.--Houston [1st Dist.] 1978, writ ref'd n.r.e.) (appeal from denial of temporary injunction). 
The person claiming either type of estoppel must show that he had no knowledge, and no means
of acquiring knowledge, of the truth of the matter forming the basis of the estoppel. Barfield v.
Howard M. Smith Co., 426 S.W.2d 834, 838-39 (Tex. 1968); Simpson v. MBank Dallas, N.A.,
724 S.W.2d 102, 107-08 (Tex. App.--Dallas 1987, writ ref'd n.r.e.); Lifson v. Dorfman, 491
S.W.2d 198, 201 (Tex. Civ. App.--Eastland 1973, writ ref'd n.r.e.) (applying lack-of-knowledge
requirement to promissory estoppel). If the claimant ignores highly suspicious circumstances that
should warn him of danger or loss, no estoppel exists. Barfield, 426 S.W.2d at 839; see Gafas,
562 S.W.2d at 898.

 Lockett testified that when he talked with Moore before leaving Utah, Moore
virtually guaranteed him that if he came to San Saba to work, Moore would arrange to have his
service obligation transferred. Lockett understood that to accomplish the transfer, Moore would
talk to people he knew who could negotiate with the National Health Service Corp. Before
leaving Utah, Lockett asked Moore to commit his employment promises to writing; Lockett
testified that he did not want to move to San Saba until he received the terms of Moore's offer in
writing. 

 Lockett failed to offer any evidence that he had no knowledge of the matter forming
the basis of the alleged estoppel. Rather, Lockett's own testimony proves the opposite. When
Lockett decided to move to San Saba, he knew that he had no firm guarantee of a transfer from
Moore: Moore had stated that because he could not obligate in advance the people he said could
accomplish the transfer, he had omitted the promise of a transfer from his written offer. Further,
by refusing to sign the agreement, Lockett treated any guarantee as less than firm; Lockett showed
that he understood the implication of Moore's not putting the promise in writing. We overrule
point one.

 In point of error two, Lockett argues that the trial court erroneously instructed the
jury on his cause of action for fraud. A cause of action for fraud consists of six elements: (1)
a material representation was made; (2) it was false; (3) when the speaker made it, he knew it was
false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) he
made it with the intention that it be acted on by the party; (5) the party acted in reliance on it; (6)
he thereby suffered injury. Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 185 (Tex. 1977). 
Lockett's cause of action for fraud is a separate cause from promissory estoppel, differing in the
element of intent. For a promise to perform in the future to be actionable fraud, the promisor
must make the promise without present intent to perform. Citizens Standard Life Ins. Co., 521
S.W.2d 354, 356 (Tex. 1975). A statement of fact is fraudulent if the speaker knows it is false
or makes it recklessly without any knowledge of its truth. Stone, 554 S.W.2d at 185; Blue Bell,
Inc. v. Peat, Marwick, Mitchell & Co., 715 S.W.2d 408, 415 (Tex. App.--Dallas 1986, writ ref'd
n.r.e.). In either case, the speaker must intend that the other party act on his representation; this
aspect of fraudulent intent imports a significantly greater degree of purposeful conduct than
foreseeability. Blue Bell, Inc., 715 S.W.2d at 415. 

 Lockett claims that the court improperly instructed the jury that to find fraud, it
must find that Lockett "reasonably" relied on Moore's representation. 

 The jury question on fraud stated:



1. Do you find from a preponderance of the evidence that Jimmy Moore, acting
for San Saba Hospital, Inc. fraudulently induced Kerry L. Lockett, M.D. to
leave his position with the National Health Service in Utah and move to San
Saba by making the following representations, if any? (1)


 Answer "Yes" or "No."


 (a) that Moore could arrange for the transfer of Dr. Lockett's governmental
service obligation to the San Saba area.


 We, the jury, answer: No 


 (b) that Moore knew people who could arrange for the transfer of Dr.
Lockett's governmental service obligation to the San Saba area.


 We, the jury, answer: No 



Following this question was the instruction that Lockett contests:



 In order to find fraudulent inducement under (a) or (b) above, you are
instructed that you must find all of the following:


(1) that a material representation of fact was made;


(2) that the representation, when it was made, was false;


(3) that at the time the representation was made, the speaker knew it was false
or made it recklessly without any knowledge of its truth and as a positive
assertion;


(4) that the representation was made with the intention that the other party act
upon the representation;


(5) that the other party reasonably relied upon the representation;


(6) that the other party thereby suffered injury.



A separate subsection of question one, with separate instructions, asked the jury whether Moore
fraudulently promised to arrange to transfer Lockett's governmental service obligation to San
Saba. The jury failed to find that Moore made a fraudulent promise.

 To enable the jury to render a verdict, the trial court must submit proper
instructions. Tex. R. Civ. P. 277. An erroneous instruction requires reversal only if it probably
caused the rendition of an improper judgment. Tex. R. App. P. 81(b); Island Recreational Dev.
Corp. v. Republic of Texas Sav. Ass'n, 710 S.W.2d 551, 555 (Tex. 1986). The reviewing court
determines whether an alleged error is reversible by considering the pleadings, the evidence, and
the entire charge. Island Recreational Dev. Corp., 710 S.W.2d at 555.

 The person alleging fraud need not exercise reasonable care to protect himself. 
Trenholm v. Ratcliff, 646 S.W.2d 927, 933 (Tex. 1983); Isenhower v. Bell, 365 S.W.2d 354, 357
(Tex. 1963). Only actual knowledge of the speaker's misrepresentation destroys a person's right
to rely on the misrepresentation. Koral Indus. v. Security-Connecticut Life Ins. Co., 802 S.W.2d
650, 651 (Tex. 1990). Thus, the trial court's instruction to the jury that it must find Lockett's
reliance to have been reasonable erroneously increased Lockett's burden of proof.

 The jury was asked to decide whether Moore committed fraud by stating that he
could arrange to transfer Lockett's service obligation or that he knew people who could. If the
person to whom a false representation is made is aware of the truth, he is not deceived and cannot
have relied on the representation. Chitsey v. National Lloyd's Ins. Co., 698 S.W.2d 766, 769
(Tex. App.--Austin 1985), aff'd, 738 S.W.2d 641 (Tex. 1987); Bynum v. Signal Life Ins. Co., 522
S.W.2d 696, 700 (Tex. Civ. App.--Dallas 1975, writ ref'd n.r.e.). Likewise, a person cannot be
induced to act on a false statement that he knows is false. Bynum, 522 S.W.2d at 700.

 Both Lockett and Moore understood that Moore would ask people he knew to work
with the health service to arrange the transfer. Lockett testified that Moore insisted that there was
no question about his ability to arrange the transfer. Yet Lockett also testified that Moore told
him that he could not obligate the people he said could arrange the transfer until he talked to them. 
When Lockett decided to leave Utah and move to San Saba, he knew that Moore had not yet
talked to these people. Lockett therefore knew that Moore's ability to arrange the transfer
depended on people whose own ability to do so was not guaranteed.

 Lockett further testified that he did not sign the agreement requiring two years'
employment because he knew that if his obligation were not transferred to San Saba, he would
have to leave within a year. This testimony shows that Lockett knew both the fact that Moore's
ability to arrange the transfer was uncertain and the consequence of that fact. E.g., Lyons v.
Montgomery, 685 S.W.2d 390, 392-93 (Tex. App.--San Antonio), rev'd in part on other grounds,
701 S.W.2d 641 (Tex. 1985). The testimony also reflects that Lockett took action based on
Moore's contingent ability to arrange the transfer of his service obligation. Because the jury
would have been justified in failing to find that Lockett relied on Moore's representations, we
cannot say that the trial court's error in instructing the jury to find reasonable reliance probably
caused the rendition of an improper judgment. Tex. R. App. P. 81(b); e.g., Automobile Ins. Co.
v. Davila, 805 S.W.2d 897, 904-05 (Tex. App.--Corpus Christi 1991, writ denied). We overrule
point two.

 In point of error three, Lockett claims the trial court erred in the form in which it
submitted a jury question on alter ego. The jury question concerns the existence of an alter-ego
relationship between San Saba Hospital, Inc., and San Saba National Bank. This Court previously
granted the parties' joint motion to dismiss the hospital and the receiver for the bank as parties
to the appeal. The dismissal of the hospital and the bank's receiver leaves the trial court's
judgment as to them intact. Red Ball Motor Freight, Inc. v. Southern Conference of Teamsters,
358 S.W.2d 955, 956 (Tex. Civ. App.--Waco 1962, no writ). Because the hospital and the bank's
receiver are no longer before the Court and our judgment cannot affect them, we do not address
point three.

 We affirm the judgment of the trial court.


[Before Justices Powers, Kidd and B. A. Smith]

Affirmed

Filed: June 30, 1993

[Do Not Publish]
1. [1] Although the question submitted to the jury and Lockett's argument under this point are
phrased in terms of fraudulent inducement, fraudulent inducement is properly an affirmative
defense rather than a cause of action. E.g., Oilwell Division, United States Steel Corp. v. Fryer,
493 S.W.2d 487 (Tex. 1973). Lockett stated a cause of action for fraud in his petition. The
elements of fraud and fraudulent inducement are identical. Compare Stone, 554 S.W.2d 183, 185
(Tex. 1977), with Fryer, 493 S.W.2d at 491.