[No. 6,845.—In Bank.]

## CLARA A. HELM, Adm'x etc., v. JOHN MARTIN.

Gift—Weight of Evidence—Jury—Instruction—Trial.—In an action for money loaned (the complaint also containing a count for money had and received, etc.), the defendant and one M. testified (in effect) that they applied to H. (the plaintiff's intestate) for loans of money to purchase certain stock (the defendant one hundred and M. fifty shares); that H. assented, and gave M. a check for the money with which to purchase the stock, including one hundred shares for himself; that M. purchased the stock, and that, a day or two thereafter, the defendant, M. and H. being together, and M. having the certificate of shares in his possession, the

defendant and M. proposed to give their notes for the money advanced to them, and that H. declined to receive the notes, and told them that he made them a present of the stock; and that M. thereupon handed to defendant his one hundred shares, gave H. his, and took fifty shares himself. Depositions of these two witnesses were also read in evidence, in which (as was claimed by the plaintiff) the witnesses gave a different account of the transaction. At the close of the evidence, the Court in effect instructed the jury, that the mere application of M. and the defendant to H. to make the loan, and the consent of H. to such application, did not necessarily constitute a loan from H. to the defendant, or from H. to M., if H. all the time intended the transaction to be a gift and not a loan. The verdict was for the defendant.

*Held*, That the facts testified to tended to show that the transaction was a gift and not a loan, and that the instruction was correct and applicable to the evidence; that if, as contended by appellant, each of the witnesses contradicted himself and was contradicted by the other, the jury was the sole judge of the weight to be given to their entire testimony and to every part thereof, and that therefore the verdict could not be disturbed.

Id.—Admission of Immaterial Evidence—Trial.—The admission of immaterial evidence: *Held*, Upon the facts stated in the opinion, to have been an immaterial error.

Appeal from a judgment for the defendant, and from an order denying a new trial, in the Twelfth District Court, City and County of San Francisco. Daingerfield, J.

The instruction referred to in the syllabus was as follows: "To ascertain whether the transaction is a loan or a gift, the intent of both parties must be considered. It takes at least two parties to make a gift, and it takes at least two parties to make a loan. The mere application of McGovern and Martin to Helm, the deceased, to make each of them a loan of money wherewith to purchase a certain number of shares of the California mining stock, and the consent of Helm to such application, and the purchase of the stock in question by McGovern with the money of Helm, would not, if such be the facts, necessarily constitute a loan from Helm to Martin, or a loan from Helm to McGovern, if Helm all the time intended the transaction to be a gift and not a loan."

*Garber, Thornton & Bishop*, and *Craig & Meredith*, for Appellant.

That the transaction originally was a loan can not admit of doubt or debate. Both Helm and Martin, at the first conversation, in so many words agreed, the one to lend, the other

to borrow, and Martin, by his own evidence, intended to borrow and considered it a loan, until when, much to his surprise, on his tendering a note for it, Helm said not that he had not at first intended to make a loan—not that Martin owed him nothing—but that he was then of the mind—then intended to make him a present of the debt. If such an attempt as this can prevail, no contract is safe. It matters not that a definite proposition has been made and accepted as made. It can be destroyed by the mere production of verbal evidence of a gift afterwards proffered and accepted, without any delivery, and thus by simply allowing, or rather inviting, a jury to ignore the rule of law, by presuming from the gift afterwards made, a secret, unexpressed intention in the mind of the donor in direct opposition to the language used by him in making the contract. We submit that the rule of this Court against interfering with verdicts where there is a conflict of evidence can not be so stretched as to cover a case like this, where it is sought to substitute for the actual delivery required by law as the protection of widows and orphans, a shadowy presumption of an intention on the part of one of two contracting parties, not participated in by the other, and never expressed, in the truth of uncontradicted evidence, of an expressed intention directly the reverse. At defendant's request the jury were instructed that, to constitute a valid gift, not only a delivery, but the meaning and intention to accept as well as to make the gift, must be manifest; and that it takes two parties to make a gift as it takes two parties to make a loan. In this novel condition of affairs, then, we suppose the only contract is that which the law implies from the acts of the parties; and at least from the moment Helm's money was paid to Glover for the use of Martin, and McGovern as Martin's agent held the stock bought with it for Martin, Martin had the right to the stock, and became indebted to Helm for his share of the money paid for it. We think that would be reached by the simple calculation of multiplying eight thousand eight hundred and twenty-five dollars by two, and dividing it by five. But however that may be, Martin owed him just what the law would imply from these undisputed facts, and plaintiff could recover it here on the counts for money had, etc., if not on the other

counts. (*Kreutz* v. *Livingston*, 15 Cal. 346; *Hudson* v. *Robinson*, 4 Mau. & Sel. 475.) Whether Helm's intention was what he said it was, or whether it was exactly the reverse, as Mr. McAllister psychologically insists, without a particle of testimony that he ever uttered a word in the slightest degree inconsistent with his original contract as expressed, still either way here was a cause of action, a chose in action, enforceable by and belonging to Helm before the pretended gift of it. The contract results from the operation of the language used and acts done at the time, as deduced by the law itself, and can neither be established nor set aside by the secret, unexecuted purpose or intention of one of the parties. (*Snedeker* v. *Warring*, 2 Kernan, 170; *Wadleigh* v. *Janvrin*, 41 N. H. 512; *Tate* v. *Blackburne*, 48 Miss. 1; *Davis* v. *Perley*, 30 Cal. 636; *City* v. *Dahn*, 36 Ind. 337.) "On principle it is quite clear that a claimant, insisting on a parol gift of this nature, * * * must establish a clear and satisfactory case." (*Walter* v. *Hodge*, 2 Swans. 102; *Cutting* v. *Gilman*, 41 N. H. 152.) "If the thing be not capable of actual delivery, there must be some act equivalent to it. . * * * If the thing given be a chose in action, the law requires an assignment or some equivalent instrument, and the transfer must be actually executed." (*Wilson* v. *Carpenter*, 17 Wisc. 533; *Murray* v. *Cannon*, 41 Md. 477; *Johnson* v. *Spies*, 5 Hun. 469; *Curry* v. *Powers*, 70 N. Y. 215; *Estate of Webb*, 49 Cal. 543; *Gray* v. *Barton*, 55 N. Y. 73; Broom's Commentaries on Com. Law, 4th ed. 433 (434); Browne Stat. Frauds, 3d ed., § 66; Bishop on Con., § 434 and cases cited; *Sheegog* v. *Perkins*, 4 Baxter, Tenn., 281.)

*McAllister & Bergin*, for Respondents.

The whole effect of Martin's testimony before the Probate Court is to impeach and contradict his testimony before the jury on the trial of this cause. It all goes to Martin's credibility, of which the jury were the arbiters. (Wells on Questions of Law and Fact, § 326 and cases cited.) The transaction between Helm and Martin never took the final shape of a loan. The precise difference between the appellant's counsel and ourselves is this: He claims the transaction was a perfected loan because Martin asked Helm to loan him the

money wherewith to buy the stock, and thereupon Helm
gave checks to McGovern to be used in the purchase of one
hundred shares of the capital stock of the California Mining
Company for himself, one hundred shares for Martin, and fifty
shares for McGovern. Martin, no doubt, then supposed and
believed he was borrowing money from Helm, but we claim
that it takes two parties to make a loan—not only a borrower,
but also a lender; that before the loan is perfected it requires
two intents to consummate it—the intent not only of Martin,
but also the intent of Helm. The whole transaction was un-
perfected, unfinished, *in fieri,* until Helm's intent was ex-
pressed. That intent was shown by the subsequent emphatic
conduct of Helm, when he said to Martin and McGovern: "I
make you a present of this stock; that is the way I am a
going to do this business." Certainly a man's original intent
can be deduced from his subsequent conduct. Mr. Helm's in-
tent in this transaction was a question of fact for the jury.
(*Doty* v. *Willson,* 47 N. Y. 580; *Bridges* v. *Paige,* 13 Cal. 641.)
As to admissibility of subsequent declarations to show what
was the original intention of the parties, see *Grangiac* v. *Arden,*
10 Johns. 293; *Anderson* v. *Baker,* 1 Ga. 599. As to what
constitutes and how a gift is created, see *Doty* v. *Willson,* 47 N.
Y. 580; *Winter* v. *Winter,* 101 Eng. Com. Law, 997; *Champ-
ney* v. *Blanchard,* 39 N. Y. 111; *Hunt* v. *Hunt,* 119 Mass. 475;
*Whiting* v. *Barrett,* 7 Lans. 108.

SHARPSTEIN, J.:

The real issue in this case was whether the transaction be-
tween the plaintiff's intestate and the defendant was a gift,
and upon that issue the jury returned a verdict in favor of
the defendant. A motion for a new trial on the ground,
among others, that the evidence was insufficient to justify the
verdict, was denied by the Court below. If there is any evi-
dence to sustain that verdict, this Court will not disturb the
order of the Court below. For the purpose of determining
that question, it will only be necessary to consider such por-
tions of the testimony as are most favorable to the defendant.
And we think that that contained in the following extracts
will suffice :

In one part of his testimony the defendant says: "So I

asked him (Helm) if he would lend me three thousand five hundred dollars to buy one hundred shares of California, and he said that he would. He said, 'Do you think it would be best for me to buy?' Well, I said, this is the information, I think it good: this man don't state things to me unless he means it, and he even said he would protect me. Then he said, 'All right, then, I will buy a hundred shares myself,' and Phil. McGovern said that he would like to buy fifty, and the next day McGovern bought the stock. I could not tell what day of the month that it was McGovern bought the stock, or part of it. In one or two days after I came in and asked McGovern if Helm had been there, he said 'No,' he said we 'want to fix that matter up with him, and we will when he comes in to-day or to-morrow,' and during the conversation Helm came in, and I said to him familiarly, as I always did, Jim, let us fix that matter up about that stock transaction, Mr. McGovern will indorse my note and I will indorse his; so either McGovern went for pen and ink or asked the barkeeper to hand him pen and ink; it was standing at the end of the counter. Helm said, 'No, I am not going to take any notes for this money, I am going to make you a present of this stock.' I said, Well, that is no way to do business, that is not a business transaction. 'Well,' said Helm, 'that is the way I am going to do business; you have saved me thousands of dollars on the sale of that horse, and that is the way I am going to do this business.' I said, All right if you mean it, let us take a drink. We took a drink, and McGovern handed me my stock and handed Helm his, and kept his own.  *  *  * After that I had some further conversation with him again upon that subject, at a subsequent time. The stock went from 'thirty-five dollars to fifty dollars, and he and I were walking down together, and I said, Helm, I am going to sell that stock and pay you the money. He said, 'Martin, I have made you a present of that stock, and I meant it, and do mean it, and I will never take a cent of it.' The conversation dropped and I said, all right."

McGovern testified that on the day following that on which the interview first above referred to occurred, Helm gave to him, McGovern, sufficient money to purchase two hundred and fifty shares of stock, and that he, McGovern, gave the

money to a broker with directions to purchase that number of shares, which he did. "After I got the stock," says Mc-Govern in his testimony, "I think it was a day or two afterwards—Mr. Martin was in there and Mr. Helm walked in, and Martin says to me, 'Let us fix that stock transaction now,' that is, for Martin to give him a note and I indorse it, and I give my note and he indorse it for me; that is the way we were going to give our notes, and I started to get some pen and ink, and while Mr. Martin was talking, maybe it was Van, my barkeeper, I went or told him to get it, to go in the back room and make out the notes, in the back room of my saloon. Helm stopped right there. He said: 'No, I won't have no notes,' says he: '*That stock I give to you, you are the two best friends I have got;*' and says he: 'I want you to have it.' 'Well,' says Martin, 'That is a curious way to do business.' 'Well,' he said, '*That is the way I am going to do this business.*' So I handed Martin his stock, one hundred shares, and I gave Helm his one hundred shares and took fifty shares myself."

"Q. That delivery was made after Helm had said he proposed to do that business in that way?

"A. Yes, sir."

The transaction as narrated by these witnesses reduces itself to this: That Helm, being applied to by the defendant to loan him three thousand five hundred dollars to invest in certain mining stock, made some inquiries concerning the stock, and finally concluded to take one hundred shares himself. Mc-Govern wished to buy fifty shares. Helm thereupon gave to McGovern a sufficient sum to purchase two hundred and fifty shares. After the purchase was made the three met again, when Helm insisted upon making a present of one hundred shares to Martin, fifty shares to McGovern, reserving one hundred shares himself.

If, as contended by appellant, each of these witnesses contradicted himself, and was contradicted by the other, the jury was the sole judge of the weight to be given to their entire testimony, and to every part thereof. This court can not pass upon the question of the credibility of witnesses, nor upon the preponderance of evidence.

The plaintiff was sworn in her own behalf, and on her

cross-examination stated that her intestate "owned a horse named Sam Purdy," which was sold after her husband's death, at auction. Thereupon defendant's counsel asked, "What was the price he brought?" The question was objected to by defendant's counsel as not being proper cross-examination, and as being irrelevant and immaterial. And in reply to a remark made by the Court, plaintiff's counsel said that if the defendant wished to make the witness his own, he, plaintiff's counsel, had no objection, although he could not see the relevancy of the testimony. Defendant's counsel then explained the object he had in asking the question and the Court said that it might be answered. Plaintiff excepted. That horse is frequently mentioned by the witnesses, without objection, save in this one instance, and while we are unable to discover that the price which he sold for was material in any sense, we are not prepared to hold that the judgment should be reversed because the witness was asked and permitted to state, after she had stated that the horse was sold at auction, what price he brought.

The plaintiff's exceptions to the charge of the Court are based upon the assumption of counsel that there was no evidence which tended to prove that the transaction was a gift. We have already indicated that, in our opinion, there was some evidence tending to prove that such was the transaction. We do not think that there was any error in the charge of which appellant can justly complain.

Judgment and order affirmed.

Morrison, C. J., McKee, J., and Thornton, J., concurred.